552 A.2d 772

Orthodox Minyan of Elkins Park, Appellant *v.* Cheltenham Township Zoning Hearing Board and Township of Cheltenham, Appellees.

Argued December 16, 1988, before Judges DOYLE and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Hillel Lewis*, with him, *Abraham Leizerowski, Gerald Jay Pomerantz & Associates, P.C.*, for appellant.

*Gilbert P. High, Jr., High, Swartz, Roberts & Seidel,* for appellees.

OPINION BY SENIOR JUDGE BARBIERI, January 20, 1989:

The Orthodox Minyan of Elkins Park (Appellant) appeals the order of the Court of Common Pleas of Montgomery County which affirmed the decision of the Cheltenham Township Zoning Hearing Board (Board) denying Appellant a special exception to use its property as a synagogue. We reverse and remand.

A Minyan of the Orthodox Jewish faith is a congregation consisting of at least ten adult members and a rabbi. Appellant's Minyan numbers approximately 39 adult members, most of whom are residents of Elkins Park in Cheltenham Township. Because Appellant's previous rented location for holding services became unusable, Appellant purchased a residence located at 503 Spring Avenue in Elkins Park for the purpose of converting it to a synagogue and residence for the Minyan's rabbi and family.

Appellant's property is zoned R-4 by the Cheltenham Township Zoning Ordinance (Ordinance). A synagogue is a religious use expressly permitted by special exception in this zoning classification if it can meet the general requirements for special exceptions contained in Section 2106 of the Ordinance and the requirements for off-street parking contained in Section 2304(2) of the Ordinance. Section 2106(d) states that the proposed special exception shall not adversely affect traffic conditions. Section 2304(2)(d) provides that a church, school or other place of public or private assembly must have at least one parking space for each three seats provided for assembly. The parking spaces shall be within a reasonable distance from the building served.

Appellant initially proposed that the six parking spaces already on its property were adequate because the nature of the Orthodox Jewish faith prohibits its members from driving automobiles during the Sabbath day which lasts from Friday evening to Saturday evening. Appellant's members testified that they normally held services on Friday nights, Saturday and Sunday mornings, and Jewish religious days on which use of an automobile is prohibited. Most of Appellant's members are local residents who walk to services. Approximately five or six members would drive their automobiles to services on Friday evenings and then leave their cars at the synagogue over the Sabbath day (N.T. 10/20/86, pp. 44-45, R.R. 29-30a).

The Board decided to strictly construe Section 2304(2)(d) and ordered Appellant to provide one parking space for each three seats in the congregation. Based on testimony that a maximum of fifty persons had taken part in services at the Minyan during Yom Kippur, the Board found that Appellant needed to provide 17 parking spaces for the congregation plus two for the rabbi and his family. Appellant first proposed to satisfy this parking requirement by leasing off-street parking from neighboring residences and schools. The Board found that these leases did not satisfy the parking requirement because they were not permanent and not contiguous to Appellant's property.

Prior to the written decision of the Board, Appellant was granted permission to re-open the hearing and filed a plan offering to construct an on-site parking lot with the required 19 spaces. The Board agreed this would satisfy the parking requirements of Section 2304(2)(d). However, the Board decided that the impact of increasing the intensity of parking on the site to 19 spaces would adversely affect the traffic conditions at the dangerous and congested intersection bordering the property in viola-

tion of Section 2106(d) of the Ordinance (Board's Conclusion of Law No. 3). The Board denied Appellant's special exception under Section 2106(d) and the trial court affirmed without taking additional evidence.

It is ironic that the Board denied a special exception to convert a property to religious use on the grounds of increased traffic flow to a group whose religion prohibits them from driving automobiles during their day of worship. The central, uncontradicted fact of this case is that Appellant sought a special exception to use its property for religious worship and that Orthodox Jews do not drive on their Sabbath day of worship or on Jewish religious holidays.

The Board points out that during non-Sabbath days the Minyan holds morning services and there is no restriction on the use of vehicles to attend these services. The uncontradicted evidence is that five or six members of the Minyan drive to these services and the rest walk. The Board's conclusion that the addition of 19 parking spaces will adversely affect traffic flowing into the intersection bordering the property is unsupported. The evidence is that five or six automobiles will park on the property, not 19.

Section 2106(d) of the Ordinance does place the burden on Appellant of persuading the Board that the proposed special exception will not adversely affect traffic conditions. However, the fact that a proposed use would contribute to projected traffic congestion primarily generated by other sources is not a sufficient basis for denying the special exception. *Kern v. Zoning Hearing Board of the Township of Tredyffrin*, 68 Pa. Commonwealth Ct. 396, 402, 449 A.2d 781, 784 (1982). There must be a high probability that the proposed use will generate traffic patterns not normally generated by this type of use and that this abnormal traffic will pose a substantial threat to the health and safety of the community. *Appeal of Mar-*

*tin*, 108 Pa. Commonwealth Ct. 107, 112, 529 A.2d 582, 584 (1987).

Appellant presented uncontradicted evidence that its proposed use as an orthodox synagogue would generate *less* traffic than a normal religious use by reason of the beliefs of its members that prohibit traveling by automobile on the Sabbath or religious holidays. The Board's conclusion that because 19 parking spaces were required under Section 2304(2)(d), all 19 spaces would be used and would discharge traffic to the intersection in question at the same time is unsubstantiated.

Appellant's uncontradicted evidence establishes that at most five or six automobiles per day, in addition to the rabbi, would enter or leave Appellant's property. Appellant's entire Minyan consists of only 39 adult members. Most of these members live within six to eight blocks of the property and will walk to services (N.T. 10/20/86, p. 68, R.R. 36a). An influx of five or six cars per day into a residential neighborhood does not constitute an abnormal traffic pattern that poses a substantial threat to the health and safety of the community. *See In Re O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 (1957).

We must conclude that "increase in traffic at an already dangerous intersection" is not a sufficient basis for denying a special exception when the proposed use actually contributes less traffic than a normal use of the same type. *Appeal of Martin; Kern*. The order of the trial court is reversed.[1]

---

[1] This opinion does not affect the off-street parking issue which under Section 2304(2)(d) is a general requirement of the ordinance and not just a condition attached to the special exception.

## ORDER

NOW, January 20, 1989, the order of the Court of Common Pleas of Montgomery County at No. 87-02093, dated October 28, 1987, is hereby reversed and remanded for proceedings not inconsistent with the foregoing opinion. Jurisdiction relinquished.