**In re Appeal of BRICKSTONE REALTY CORP. and Residence Inn by Marriott, Inc., from the undated decision of the Zoning Hearing Board of Whitpain Township.**

**Appeal of .Susan Walsh, Jane Medvetz, Bruce Nichols and Meghan Weiss.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 28, 2001.

Decided Nov. 30, 2001.

Neil A. Stein, Blue Bell, for appellants.

Timothy R. Coyne, Philadelphia, for appellee, J. Lamprecht.

J. Edmund Mullin, Lansdale, for appellees, Brickstone Realty Corp. and Residence Inn by Marriott, Inc.

Before COLINS, Judge, LEADBETTER, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Susan Walsh, Jane Medvetz, Bruce Nichols, and Meghan Weiss (Appellants) appeal from the order of the Court of Common Pleas of Montgomery County (trial court) that reversed the decision of the Whitpain Township Zoning Hearing Board (Board) denying the request for special exception of Brickstone Realty Corporation (Brickstone). We affirm.[1]

Brickstone is the equitable owner of 855 Penllyn Blue Bell Pike in Blue Bell, Whitpain Township (the Premises), and has entered, or plans to enter, into an agreement with Marriott International to develop and operate a 114 unit Marriott Residence Inn on the Premises. The Premises consist of 3.02 acres and lie in an area zoned C Commercial. The Whitpain Township Zoning Ordinance (Ordinance) provides that land in C Commercial districts may be used for a hotel by special exception, provided that satisfactory public sewage facilities are available. On August 17, 1999, Brickstone filed an application for a special exception to erect a Marriott Residence Inn on the Premises, and a hearing was held over several nonconsecutive dates before the Board. Brickstone

---

1. The separate appeal of the trial court's order by the Whitpain Township Board of Supervisors, docketed at No. 1188 C.D.2001, has been discontinued.

presented the testimony of four witnesses: Bo Walters, Brickstone's vice president; John Connors, a Brickstone employee; Robert E. Blue, Jr., a professional engineer; and Kevin L. Johnson, president of Traffic Planning & Design, Inc. Many residents, including Appellants, attended the hearing and voiced their opposition. Some residents were represented by legal counsel. The Whitpain Township Planning Commission recommended approval, provided that the inn not contain large conference rooms and that any small meeting rooms be limited to patron use only.

The Board found the following relevant facts. The proposed inn would not be a full-service hotel, but would primarily serve business travelers and have a "residential" feel. The average stay for a guest was anticipated to be seven to eleven days at a nightly rate of $100 to $115. The 114 units would have kitchenettes for beverages and continental breakfasts, and would vary in size from 400 square feet studios to 900 square feet two-bedroom suites housed in two three-story "guest wings." The inn would include a swimming pool, a sport court, and a 5000 square foot "gatehouse" with a conference area plus facilities for check-in, laundry, exercise, vending machines, and other amenities. There would not be a significant food service, however; nor would the facilities be open for general public use.

Walters testified that there would be four full-time and four part-time employees. The project would have 118 parking spaces, one for each unit, and one for each full-time employee, as required by the Ordinance. There would be two-way traffic on three sides of the building and one-way traffic on the north side of the building. The hotel would be served by public water and sewer and would not place an undue burden on these or other public facilities,

nor would the structure impair light or air for neighboring properties.

The area surrounding the site is of a "mixed-use" character, consisting of residential, recreational, restaurant, and other commercial uses. Immediately adjoining or nearby to the site are gas stations, a body shop, vacant land approved for office use, a number of businesses, two office buildings, an assisted living facility, two restaurants, a convenience store, and a townhouse development. Mr. Blue testified that the proposed use would be less intensive than a number of these surrounding uses and other permitted uses as of right, such as indoor theaters, banks, and food sales. Under the Ordinance, multiple commercial uses on the Brickstone site would be permitted. The inn would comply with Ordinance specifications, and therefore would not overcrowd the land or create an undue concentration of population.

Mr. Blue testified that there would be no increased risk of fire or to the public safety by the project because the site would have ingress and egress to both Penllyn Blue Bell Pike and Skippack Pike; the inn would be fully sprinkled; the Township fire marshal expressed no concerns regarding the project; and the single-lane northerly road around the inn would not cause a problem as it was not anticipated that a car would be attempting to pass a fire truck while on the Premises.

Mr. Johnson's firm completed a trip generation study and a traffic study for Brickstone. The trip study indicated fifty-one entering and existing trips for the inn in the a.m. peak-hour, and forty-eight entering and exiting trips in the p.m. peak-hour. This is in contrast to an anticipated eighty-four a.m. trips and 120 p.m. trips for an approved office use. Mr. Johnson testified that the proposed inn would cause very little impact on traffic at the intersec-

tion of Penllyn Blue Bell Pike and Skippack Pike and that it would not cause undue congestion of pedestrian or vehicular traffic nor any safety concerns because of the location or design of the entrance and exit spaces.

Lay testimony in opposition to the proposed inn indicated that an eighty-eight-unit Residence Inn in Devon had thirty employees and their families residing at the establishment, that a 118 unit Residence Inn in Horsham had from sixteen to thirty-three employees, and that Marriott's policy is to maintain one full-time employee for every sixteen rooms. Concerns were voiced about traffic, including the concern that vehicles would use the cut-through at the inn to avoid the intersection, and that dangerous left-turns would be made onto Skippack Pike near the intersection.

The Board concluded that the proposed use constitutes a "hotel" use as contemplated by the Ordinance, and is therefore allowable by special exception. The Board also appeared to find that Brickstone met its initial burden of demonstrating its compliance with the factors required for a grant of special exception. *See* Board's Conclusion of Law No. 8. The Board determined, however, that the Ordinance also requires an applicant to demonstrate that the allowance of the special exception will not be contrary to the public interest. Section 160–229(C) of the Ordinance provides for nine factors to be considered when determining whether or not the use is contrary to the public interest. These are whether the use would: (1) be detrimental to the use of adjacent property, (2) cause undue congestion of pedestrian or vehicular traffic, (3) endanger safety because of improper location or design of ingress and egress facilities, (4) cause an increase of fire or otherwise endanger public safety, (5) overcrowd the land, (6) impair an adequate supply of light and air to adjacent properties, (7) adversely affect transportation or unduly burden public services, (8) adversely affect public health, morals, safety, or public welfare, and (9) run counter to the spirit and purpose of the Ordinance.

The Board found Mr. Walters not credible concerning the adequacy of four full-time and four part-time employees to service the 114 unit inn "for purposes of serving the hotel's guests and for public safety and security." Board's Conclusion of Law No. 15. The Board also found that Mr. Blue was not credible regarding his testimony that the premises would achieve a requisite level of fire safety. This finding is essentially based on two matters. First, Mr. Blue's testimony that the single-lane driveway around the north side of the proposed building would not cause a danger because fire and other vehicles need not pass each other was found to be "cavalier" and unpersuasive. Second, Mr. Blue failed to go into detail concerning the sprinkler system and other potential fire safety matters. The Board concluded that the single-lane driveway around the north side of the proposed building would (1) cause undue vehicular congestion and (2) a decrease in fire safety. The Board further concluded that transportation facilities would be adversely affected by an increase in traffic in the area caused by "new trips" as opposed to "pass-by trips" that the Board determined, for unstated reasons, would arise from other permitted uses on the premises. The Board also voiced unspecified concern regarding the proposed entry and exit lane at Skippack Pike. For these reasons, the Board concluded that Brickstone failed to meet its burden for a grant of a special exception.

The trial court, without taking additional evidence, reversed and granted Brickstone's application for a special exception.

The trial court determined that the Board erred by placing a continuing burden upon Brickstone once it had met its initial burden of establishing that it was entitled to the special exception. The court noted that our case law requires that the protestors to the request for a special exception present evidence that the public health, welfare, and safety will be substantially harmed by the grant of the special exception. Moreover, this evidence must show a high degree of probability of the alleged harm and may not simply be speculation of harm. The court observed that the lay testimony of the protestors simply was an expression of concern for greater traffic congestion and at best demonstrated mere speculation of harm. In contrast, the court noted that the expert testimony presented by Brickstone indicated that the hotel would generate less than a 2% increase in traffic at peak hours. The court further noted that there was no evidence that the proposed use would cause undue congestion, adversely affect transportation, or endanger the public safety. The court cited case law that holds that the mere increase in traffic from a proposed use will not defeat the grant of a special exception, nor may a special exception be defeated on speculation that some motorists will act in violation of the law. The trial court therefore determined that the critical findings of the Board concerning an undue increase in traffic congestion and endangerment were not supported by substantial evidence, and that the Board abused its discretion by denying an application for special exception, based upon mere speculation of harm, for a clearly legitimate commercial use.

Regarding the Board's findings that the proposed hotel failed to comply with requirements for fire safety, the trial court concluded that these findings also were not supported by substantial evidence. The court noted that the plan for the hotel had the approval of both the Township manager and fire marshal. The court also noted that it is improper to deny a special exception on the grounds that the driveway on the northern portion of the inn is a single lane when Brickstone met all Township regulations and because the Township supervisors may address any concerns with the proposed single lane at the later land development stage of the project.

■ Appellants, who were all individual protestors at the Board meeting, appealed to this Court. Our standard of review of an appeal from a zoning decision, where the trial court did not take any additional evidence, is whether the zoning board committed an abuse of discretion or an error of law. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). An abuse of discretion occurs when the zoning board made material findings of fact not supported by substantial evidence. *Id.*

Appellants list the following questions for review:[2] (1) whether Brickstone sustained its initial burden to establish the right to a special exception; (2) whether Appellants sustained their burden of showing that the grant of a special exception to build the inn would be contrary to public health, safety, and welfare; (3) whether the issue regarding accessibility of emergency vehicles on a single-lane driveway was one of zoning or land development; (4) whether the trial court ignored the Board's credibility determinations; (5) whether the trial court erroneously viewed Brickstone's proposed use as a permitted use instead of one permitted by special exception; (6) whether Brickstone demonstrated compli-

**2.** Appellants pose the questions as whether the trial court erred. Our standard of review, however, pertains to whether the Board, not the trial court, erred or abused its discretion.

ance with the requirements for a special exception under Section 160–229 of the Ordinance; and (7) whether Brickstone's proposal was in fact for a hotel as defined by the Ordinance or, rather, for a "multi-family dwelling" as defined by the Ordinance.

Throughout the argument for these numerously stated issues, Appellants raise many issues that the Board decided in Brickstone's favor. These issues include whether Brickstone's proposal is more correctly defined by the Ordinance as a multi-family dwelling rather than a hotel; whether Brickstone's application for a special exception was incomplete; whether Brickstone's witnesses were not credible regarding a host of issues that the Board did not address or which it addressed in Brickstone's favor; and whether Brickstone failed to sustain its initial burden of establishing its right to a special exception.

■ We note that the Board specifically found that Brickstone's proposed inn is a "hotel" as defined by the Ordinance. It is well established that a zoning board's interpretation of its zoning ordinance is to be given great weight as representing the construction of a statute by the agency charged with its execution and application. *Willits Woods Assoc. v. Zoning Board of Adjustment of the City of Philadelphia*, 138 Pa.Cmwlth. 62, 587 A.2d 827 (1991). Appellants set forth no authority, nor a persuasive argument, that indicates that the Board erred by finding that a facility designed primarily for the temporary stay of business travelers is not a "hotel" as defined by the Ordinance, but, rather, a complex of permanent residences.

■ Next, Appellants fail to set forth any basis or authority to support the con-clusion that Brickstone's application should be rejected because it allegedly failed to include information as described under two Ordinance provisions. These provisions involve information regarding a floor plan of the proposed structure drawn to scale, and a plot plan showing distances to buildings on adjacent lots. *See* Sections 160–219(B)(2) and (3) of the Ordinance. The record demonstrates, however, that Brickstone certainly presented plans to the Board indicating the nature, size, and location of the proposal. There is no confusion in the record as to what Brickstone is proposing, its size, or its location. The Board did not find any alleged omission to be a hindrance in rendering a decision as to whether a special exception was appropriate, and Appellants fail to show how the Board erred in this regard.

■ Appellants then identify testimony from Brickstone's witnesses that they allege were not credible.[3] This testimony is in regard to numerous matters. Appellants do not indicate, however, how this argument fully relates to whether the Board erred or abused its discretion. The Board, as fact finder, is the ultimate judge of credibility and resolves all conflicts of evidence. *Constantino v. Zoning Hearing Board of the Borough of Forest Hills*, 152 Pa.Cmwlth. 258, 618 A.2d 1193 (1992). Appellants present their argument as though this Court may make new credibility determinations and, based upon them, decide whether a special exception is warranted. We may not, of course, engage in fact finding or disturb the Board's credibility determinations. Thus, for example, because the Board determined that Brickstone's proposal would not place an undue burden upon Township services (Finding of Fact No. 26), we may not engage in

**3.** Brickstone points out in its brief that, in a number of instances, Appellants failed to show the full testimony in context, which con-text completely changes the nature of the testimony.

credibility determinations to arrive at different conclusions, as Appellants appear to request of us in their brief. *See* Appellant's Brief, pp. 14, 30. Quite simply, the Board's findings of fact and conclusions of law clearly indicate that only the issues concerning undue congestion of traffic and an increase in the danger of fire were the basis for its rejection of Brickstone's application. Appellants set forth no authority or persuasive argument that indicates that the application must, as a matter of law, be rejected on other grounds as well. In fact, the Board clearly erred by rejecting the application under the evidence submitted of record.

■ A special exception is a conditionally permitted use, allowed by the legislature if specifically listed standards are met. *Bray v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980). A special exception is thus not an "exception" to the zoning ordinance, but a use permitted conditionally, the application for which is to be granted or denied by the zoning hearing board pursuant to express standards and criteria. *Shamah v. Hellam Township Zoning Hearing Board*, 167 Pa.Cmwlth. 610, 648 A.2d 1299 (1994). Where a particular use is permitted in a zone by special exception, it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety, and welfare and that such use comports with the intent of the zoning ordinance. *Id.* Thus, once the applicant for a special exception shows compliance with the specific requirements of the ordinance, it is presumed that the use is consistent with the promotion of health, safety, and general

welfare. *Bray.* The burden then shifts to objectors to prove that the proposed use is not, in fact, consistent with the promotion of health, safety, and general welfare. *Id.*

■ Here, the Board apparently found that Brickstone met its burden of showing compliance with the specific requirements of the Ordinance, but then also found that the protestors met their burden of proving that the inn would not consistent with the promotion of health, safety, and general welfare. Board's Conclusion of Law No. 8.[4] The Board's determination that the protestors had proven that the proposed use was inconsistent with the promotion of health, safety, and general welfare because of traffic and fire safety matters, however, is, as the trial court determined, unsupported by the evidence. In Conclusion of Law No. 22, the Board concludes that "transportation facilities" would be adversely affected by the increase in traffic caused by the inn. No evidence was introduced, however, regarding train, bus, or other such traffic in the area. Indeed, there is no evidence that such transportation facilities even use or conduct services nearby the intersection of Penllyn Blue Bell Pike and Skippack Pike.

In Conclusion of Law No. 18, the Board finds that the single lane that would go around the north side of the inn would cause undue congestion of vehicular traffic. This is an extraordinary reason to reject an application for special exception. There is no basis in the Ordinance to conclude that the specific requirement of the applicant to demonstrate that the proposed use would not cause undue vehicular congestion pertains to anything other than

4. The Board's decision is actually somewhat loose in its terminology. Although in Conclusions of Law Nos. 8 and 17, the Board indicates that Brickstone established all of the specific criteria required under the Ordinance for a grant of the special exception, the Board's decision appears to also conclude that Brickstone failed to establish these criteria because the Board determined that some testimony by Brickstone's witnesses was not credible. *See* Conclusions of Law Nos. 13 and 17.

vehicular traffic on the public roads near the proposed use. Nothing in the record supports the conclusion that congestion of traffic on the premises and private roadways of the development would adversely affect the public health, safety, and welfare.

In Conclusion of Law No. 20, the Board finds that the proposed Skippack Pike entry and exit to the inn would be dangerous for persons using such entry and exit. The Board does not explain the basis for this finding, but it logically relates to earlier findings that protestors voiced "concern" that the Skippack Pike access would allow for left turns onto Skippack Pike near the intersection and would also enable vehicles to avoid the intersection by entering this access and exiting from the Penllyn Blue Bell Pike access. Board's Finding of Fact No. 39. Mr. Johnson, testifying for Brickstone, recommended that a sign prohibiting left turn traffic at peak hours be placed at the Skippack Pike access, but he acknowledged that absolute enforcement of this restriction would not be possible. Board's Finding of Fact No. 41.

Again, substantial evidence of record does not support the Board's finding that the Skippack Pike access is dangerous to persons using this entryway. The only expert testimony at the hearing regarding this matter came from Brickstone's witness, Mr. Johnson, a witness that the Board did not find not credible.[5] Mr. Johnson testified that this access, as well as the one on Penllyn Blue Bell Pike, is not dangerous to persons or property because of its location or design. Board's Finding of Fact No. 33. Although protestors expressed safety concerns regarding this accessway, they did nothing more than

that. No expert testimony was presented that would indicate that the location or design of the access was dangerous. Moreover, the concerns expressed by the protestors centered around the possibility of motorists making illegal cut-throughs over the Premises to avoid the intersection or ignoring any prohibition against making a left turn from the access. Board's Finding of Fact No. 39. We have held, however, that the possibility of abnormal traffic patterns caused by driving violations is not a relevant consideration for the Board when evaluating the traffic conditions arising from a proposed special exception use. *Kopelman v. Zoning Hearing Board of City of New Kensington*, 55 Pa.Cmwlth. 306, 423 A.2d 761 (1980).

▬▬▬ With regard to the Board's conclusion that the proposed inn would generally cause an undue congestion of traffic, we observe, as did the trial court, that the Board ignored case law defining the relevant considerations for evaluating traffic issues, and that the Board's conclusion is not based on substantial evidence. In *Bray*, we held that an anticipated increase in traffic for a proposed use would not on its own serve to defeat a request for special exception. Rather, to defeat a request for special exception, the protestors must show a "high degree of probability" that the anticipated traffic increase would pose a "substantial threat" to the community. *Id.* at 914. Moreover, even evidence of a significant increase in traffic is not enough to defeat a special exception unless it is shown that this substantial increase would, by a high degree of probability, pose a substantial threat to the health and safety of the community. *Id.* We further noted as a relevant factor, when evaluating the impact of traffic, evidence that other

---

5. The Board made no credibility finding regarding Mr. Johnson's testimony, as it did with Mr. Walters and Mr. Blue.

*permitted* uses may generate as much or more traffic as the proposed special exception use. *See also Lower Southampton Township v. B.P. Oil Co.*, 16 Pa.Cmwlth. 108, 329 A.2d 535 (1974). Moreover, an increase in traffic at or near an already dangerous intersection is not a sufficient basis for denying a special exception when the proposed use would contribute less traffic than a "normal use" of the same type. *Orthodox Minyan of Elkins Park v. Cheltenham Township Zoning Hearing Board*, 123 Pa.Cmwlth. 29, 552 A.2d 772, 774 (1989). Indeed, to defeat a special exception on the grounds of traffic conditions, there must be a high probability that the proposed use will generate traffic patterns not normally generated by that type of use and that such "abnormal" traffic will pose a substantial threat to the health and safety of the community. *Id.*

■ Here, as the trial court noted, Brickstone's expert evidence indicated that the proposed use would generate less than a 2% increase in traffic at peak hours. Mr. Johnson further testified that the anticipated traffic would be less than that generated by a regular hotel and, more significantly, by permitted uses, including a bank and an office building, the latter having already been approved for the Premises. Of course, the fact that a hotel use is permitted by special exception indicates the determination of the Township legislative body that the traffic generated by such use would not be detrimental to the health and safety of the community. *Shamah; West Whiteland Township v. Sun Oil Co.*, 12 Pa.Cmwlth. 159, 316 A.2d 92 (1974). Faced with this evidence and the presumption of appropriateness, the protestors were required to produce more than lay expressions of concern for increased traffic in an already busy area. *Szewczyk v. Zoning Board of Adjustment of the City of Pittsburgh*, 654 A.2d 218

(Pa.Cmwlth.1995); *Lower Southampton Township.* Proof of abnormal and hazardous traffic effects would usually require evidence in the form of traffic counts, accident records, and expert evidence. *Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa.Cmwlth.1997). *See also Pennsylvania Bureau of Corrections v. City of Pittsburgh*, 516 Pa. 75, 532 A.2d 12 (1987) (the lay concerns of neighbors must be supported by a concrete basis that includes studies, objective testimony, or other concrete facts upon which their fears are based).

A review of the record indicates that the protestors did not present any concrete evidence of a high probability that the inn would generate traffic that would be abnormally higher than that generated by the same type of use and that this abnormally high traffic would also threaten the health and safety of the community. No finding of fact made by the Board supports such a conclusion. Therefore, the Board erred by rejecting Brickstone's request for a special exception on the grounds that it would generate an undue congestion of traffic.

Similarly, the Board's finding that the proposed use would cause an increase in fire danger is not supported by the facts presented at the hearing. This finding is based on the Board's conclusion that the single lane on the north side of the proposed structure is inadequate for fire safety and because Mr. Blue failed to go into detail concerning the sprinkler system to be installed at the inn. The Board, however, failed to discuss these matters in the context of the fact that the proposal met the approval of the Township manager and fire marshal and that the proposal met all Township regulations. Further, the Board's finding that Mr. Blue's testimony was cavalier, although a characterization given by the individuals who observed the

witness, appears to be undercut by the actual testimony itself. Mr. Blue testified that he met with the Township fire marshal and Township engineer regarding the plan for the inn and also studied the issue of fire truck circulation since Brickstone wished to avoid potential fire problems. Notes of Testimony, January 26, 2000, pp. 20–22. More importantly, however, we agree with the trial court that it is improper to deny a special exception on the grounds that the driveway on the northern portion of the inn is a single lane, when Brickstone met all Township regulations, and because the Township supervisors may address any concerns with the proposed single lane, or issues concerning sprinklers, at the later land development stage of the project.

■ We have held that zoning regulates the use of land, not the particulars of its development and construction. *East Manchester Township Zoning Hearing Board v. Dallmeyer*, 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992); *Schatz v. New Britain Township Zoning Hearing Board of Adjustment*, 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991). Certainly, the issue of whether the proposal would cause an increase of fire or otherwise endanger public safety is one that the Board must address in deciding whether Brickstone is entitled to a special exception. *See* Section 160–229(C)(4). Here, however, the Board determined that Brickstone met its initial burden of proving its entitlement to a special exception. In regard to fire safety, Brickstone met its burden by showing that its proposal was not in violation of codes or regulations, that the Township engineer and Township fire marshal approved its design, that the hotel would have sprinklers, and that the circulation of fire trucks was studied. Again, as a hotel is specified as a special exception in the Ordinance, it is presumed that the use comports with the public welfare and safety. In opposition to this presumption and Brickstone's evidence, however, the protestors have essentially introduced nothing more than the supposition that the single lane skirting the north portion of the inn would be inadequate for emergency vehicles. No fire or safety experts testified for protestors in support of this concern. *See East Manchester.* Moreover, this issue, and that of the nature of the sprinkler system, is one more appropriately concerned with the future process of plan approval and permit issuance, not whether or not it is appropriate that the site be used for a hotel. Quite simply, there is no evidence that by permitting a hotel on the Premises the public will be facing an increased fire danger or that it would not be possible for the Township to approve a hotel on the Premises that could be safely designed and constructed. The trial court was thus correct in holding that the basis of the Board's rejection of the special exception on the grounds of an increased fire danger was one more appropriately in the nature of land development rather than zoning, and accordingly, the Board erred by rejecting the request for special exception on this ground.

For the above reasons, the trial court's order is affirmed.

### ORDER

AND NOW, this 30th day of November, 2001, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

Judge LEADBETTER concurs in result only.