# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur and Elke Plaxton, : 
              Appellants : 
               : 
         v. : 
               : 
Zoning Board of Adjustment, and :   No. 727 C.D. 2015
1903 Spring Garden Associates, LP :   Submitted: December 11, 2015


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: June 13, 2016


Arthur Plaxton (Mr. Plaxton) and Elke Plaxton (Mrs. Plaxton), husband and wife (collectively, Objectors), pro se, appeal from the Philadelphia County Common Pleas Court's (trial court) March 30, 2015 order affirming the Philadelphia Zoning Board of Adjustment's (ZBA) order granting variances for 1903 Spring Garden Associates, L.P.'s (Applicant) proposed multi-family dwelling with accessory, open-air parking. Objectors raise three[1] issues for this Court's review: (1) whether the trial court erred when it affirmed the ZBA's determination that the proposed parking was permitted as of right; (2) whether the trial court's decision which affirmed the ZBA's grant of a variance was in violation of the Philadelphia Zoning Code's (Code)[2] curb cut, landscaping and rear yard parking requirements because Applicant did not demonstrate unnecessary hardship or meet its burden of proof; and, (3) whether the trial court committed an error of law when it affirmed the

---

[1] In their brief, Objectors list four statements of questions involved. The issues raised in the four questions are encompassed in the Court's restatement of the issues.

[2] This Court's references to the Code pertain to the version of the Code in effect at the time the ZBA rendered its decision in this matter.

ZBA's grant of a variance because the approved plan would result in violations of law.[3] After review, we reverse and remand.

Applicant purchased the property at 1903 Spring Garden Street, Philadelphia (the Property) in August 2013 from the Archdiocese of Philadelphia. The Property is a mid-block lot, located in a Residential Multi-Family-1 (RM-1) District, and consists of a 3,225 square foot attached structure formerly used as a church. The Property is bounded by Spring Garden Street in the front, and Monterey Street, a small street identified in Applicant's site plan as approximately 6 feet, 8 inches wide, in the rear. On November 21, 2013, Applicant applied to the Philadelphia Department of Licenses and Inspections (Department) for a zoning/use registration permit for the proposed conversion of a 3-story chapel and rectory into 7 new apartments with 4 rear parking spaces. Applicant's proposed alterations include demolishing a previously-constructed rear addition which would reduce the

---

[3]    Our review in a zoning case, where the trial court has taken no additional evidence, 'is limited to determining whether the [**ZBA**] committed a manifest abuse of discretion or an error of law.' *Valley View Civic Ass['n] v. Zoning B[d.] of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). The ZBA will be found to have 'abused its discretion only if its findings are not supported by substantial evidence[,] . . . mean[ing] such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion.' *Id*. at 640.

*Callowhill Neighborhood Ass'n v. City of Phila. Zoning Bd. of Adjustment*, 118 A.3d 1214, 1221 n.13 (Pa. Cmwlth. 2015) (emphasis added). Objectors challenge whether the trial court erred when it affirmed the ZBA's decision. Since the trial court took no new evidence, it is the ZBA's "decision, not the [trial] court's [decision], we must review." *City of Phila. v. Angelone*, 280 A.2d 672, 676 (Pa. Cmwlth. 1971); *see also In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 338 n.2 (Pa. Cmwlth. 2001) ("Our standard of review . . . pertains to whether the [zoning board], not the trial court, erred or abused its discretion.").

Although Objectors' Statements of the Questions Involved pertain to whether the trial court erred by affirming the ZBA, it is clear from Objectors' arguments that Objectors challenge both the trial court's and the ZBA's decisions. Accordingly, we will address Objectors' issues only as they relate to the ZBA's decision and we will not respond to challenges to the trial court's decision for the reasons set forth above.

2

Property's occupied area from 93.8% to 72%. The proposed rear parking would be located in the area currently occupied by the rear addition and would be accessible from Monterey Street through a curb cut that is 30 feet wide.

On December 17, 2013, the Department refused to issue the permit, stating that a special exception was required for the proposed parking, and that the proposal did not comply with relevant Code requirements in that: (1) the proposed parking spaces were too small; (2) the City Planning Commission denied necessary approval of the parking area landscaping; (3) Applicant failed to propose required landscaping along the perimeter of the parking area; and, (4) the proposed open area did not meet the minimum percentage requirements.

On January 14, 2014, Applicant appealed from the Department's refusal to the ZBA, contending that: (1) no special exception is required because the proposed parking is permitted by right; (2) no variance was required because Applicant increased the size of the proposed spaces to meet Code requirements; (3) the proposed open area was sufficient since it exceeded the currently-existing on-site conditions, and the difference between the proposed and required open areas was de minimis; and, (4) Applicant's inability to comply with the landscaping requirements due to the limited space justified a variance.[4]

---

[4] Section 14-803(4)(a)(.5) of the Code requires:

> Along any street frontage, a surface parking lot shall have no more than one curb cut for both ingress and egress, the maximum width of which shall not exceed 24 ft., or two one-way curb cuts the maximum width of which shall not exceed 12 ft., provided that the curb cuts shall not occupy more than 50% of the street frontage.

Section 14-803(5)(d)(.1) of the Code provides:

> Where any surface parking lot is located along a street frontage, a landscaped area shall be installed along the entire length of the perimeter of the surface parking lot that is located along a street frontage to screen the view of the parking area from the street.

3

The ZBA held a hearing on February 26, 2014, at which Applicant's counsel addressed the issues and presented revised plans which proposed larger parking spaces. Applicant's counsel also submitted photos depicting cars currently parked behind other homes along Monterey Street. Representatives of the Spring Garden Civic Association (SGCA) testified in support of Applicant's appeal. In addition, a City Planning Commission representative testified that her agency had no objection to granting the landscape variance.

Objectors also appeared at the hearing and testified regarding their opposition to the proposal. Mr. Plaxton testified that individuals parking cars in the area designated in the proposed plans will be required to drive onto the sidewalk in order to enter or exit the parking area. Further, Mr. Plaxton explained that Monterey Street was not wide enough to accommodate the proposed parking, and that the proposed parking spaces would require occupants to intrude upon Objectors' property to exit the parking area.

At the close of the hearing, the ZBA concluded that no special exception was required for the parking, and that the parking was permitted as of right. The ZBA voted to grant a use variance for the landscaping requirement, but limit the

Except as provided in [Section] 14-803(5)(d)(.2) below, the landscaped area shall be at least equal to the required setback, but in no case less than five ft. wide.

Section 14-803(5)(d)(.2) of the Code states in relevant part:

Where a five ft. wide perimeter landscape area is not feasible based on existing site or topography constraints, as an alternative to the tree and shrub plantings required by [Section] 14-803(5)(d)(.1) [of the Code] above, a decorative masonry wall or ornamental fence at least three ft. in height may be installed. The decorative wall or ornamental fence may be installed on a berm if the combined height of berm and wall or fence is at least three ft. in height.

4

number of parking spaces to three. In regards to the special exception, the ZBA's legal conclusions included the following:

> 1. The [ZBA] concludes that [the Department] erred in requiring a special exception for the proposed accessory parking and in refusing the proposal for failing to provide sufficient open area. Applicant is therefore required only to establish that its proposal meets the criteria for grant of a variance with respect to the landscaping requirement.[]
>
> 2. In issuing a referral for the proposed parking, [the Department] relied on Code Section 14-803(1)(c), which provides that special exception approval shall be required for off[-]street parking spaces for any single or multi-family use in an attached building. The cited Code section, however, includes an exception for parking 'accessed by a rear street, rear shared driveway, or rear alley.' [*Id.*] The parking proposed by Applicant will be accessed by a rear street. It therefore falls within the exception and does not require a special exception.
>
> . . . .
>
> 13. The parking proposed by Applicant, because accessed from a rear street, is permitted by right.

ZBA's Findings of Fact and Conclusions of Law at 5, 7.

> With respect to the landscaping requirement, the ZBA stated:
>
> 4. On the issue of landscaping, Code Section 14-803(1)(c), which applies to all surface parking lots except those accessory to single[-]family or two[-]family dwellings, provides:
>
> > Where any surface parking lot is located along a street frontage, a landscaped area shall be installed along the entire length of the perimeter of the surface parking lot that is located along a street frontage to screen the view of the parking area from the street.[]
>
> [*Id.*]

5

5. No landscaping is proposed along the proposed parking lot's Monterey Street frontage. Applicant's proposal accordingly requires a variance.

6. Pursuant to Code Section 14-103(4)(a)(.3), the [ZBA] 'may, after public notice and public hearing . . . authorize variances from the terms of this [] Code.' [*Id.*]

7. In order to grant a variance, the [ZBA] must determine that each of the following criteria set forth at Code Section 14-303(8)(e)(.1) are met. . . .

. . . .

12. The [ZBA] concludes that Applicant's proposal meets the requirements for grant of a variance.

. . . .

14. Accessing the **permitted parking** would not . . . be possible if Applicant were required to install landscaping along the Property's entire Monterey Street street frontage.

15. The [ZBA] concludes that a number of factors, including the Property's midblock location, the narrowness of the street from which parking spaces will be accessed, the limited lot area available for parking, and the width of the required curb cut are physical circumstances sufficient to support a finding of hardship.

16. The project also meets the remaining requirements for grant of a variance. The proposed accessory parking is permitted by right and the proposed parking spaces exceed the minimum size required by [the] Code. Applicant seeks relief only from the landscaping requirement, which cannot be satisfied without blocking access to the proposed parking spaces. The requested variance is, therefore, the least necessary to afford relief.

17. The evidence of record additionally supports a finding that the development will not detrimentally impact the public health, safety or welfare. The project is in an area with a high demand for parking and an insufficient number of available on street spaces. By providing accessory, off

street spaces, Applicant will offset the impact of adding seven new residential units to the neighborhood.

ZBA's Findings of Fact and Conclusions of Law at 6-8 (emphasis added).

By March 21, 2014 letter, Objectors filed a reconsideration request (Reconsideration Request), explaining:

> At the time of the hearings, it was reasonable for [Objectors] to assume that the professional personnel at the [Department] had correctly stated all reasons for a zoning refusal and to assume that if [the Department] had made an incomplete determination, the experienced members of the [ZBA] would have a thorough understanding of the [Code] such that they would detect that.
>
> Unfortunately, these assumptions were incorrect, and resulted in special circumstances that could not reasonably have been known by us at the time of the hearing.

Reproduced Record (R.R.) at 68a. Objectors asserted that the proposed parking violated various Code sections, including Section 14-803(1)(b)(.1)(.a) of the Code. The ZBA denied the Reconsideration Request. Objectors appealed from the ZBA's decision to the trial court which affirmed the ZBA's decision. Objectors appealed to this Court.

Objectors first contend that the ZBA and the trial court erred when they determined that no special exception or variance was required for the proposed parking. We agree.

The ZBA found that a special exception was not required for the proposed rear parking, and granted the landscaping variance because it concluded that the proposed rear parking was permitted as of right, and because the mandated landscaping would block access to that permitted parking.

Section 14-803(1)(a)(.1) of the Code, entitled "Motor Vehicle Parking Standards[,]" permits accessory parking as "[a] surface parking lot . . . ." *Id.* Importantly, however, Section 14-803(1)(b)(.1)(.a)(.ii) of the Code **prohibits**

7

"[s]urface parking spaces and detached garages and carports . . . in required **front, side, and rear yards.**" *Id.* (emphasis added).[5]

Section 14-203(370) of the Code defines "[y]ard" as "[a]n unoccupied area, open and unobstructed from the ground, on the same lot as a building." *Id.* Section 14-203(370)(b) defines "[r]ear [y]ard" as "[a] yard located between the extreme rear line of any building or structure (not including fences) and the closer of: 1) the extreme rear line of the lot, or 2) the nearest side line of a street, shared driveway, or alley." *Id.* The Zoning Code requires that structures in an RM-1 zoning district, such as the subject Property, comply with dimensional standards. Section 14-701(1)(a) of the Code states: "All primary and accessory structures must comply with the dimensional standards in this (§ 14-701)." *Id.* Table 14-701-2 of the Code, titled "Dimensional Standards for Higher Density Residential Districts" provides that properties in an RM-1 District must have a rear yard with a minimum depth of 9 feet or 20% of the lot depth, and a minimum area of 144 square feet. *Id.*

---

[5] In holding that the ZBA did not err in finding that the surface parking was a permitted use, the trial court stated:

> [P]er the [Code], Section 14-701(2)(a.1)(.1)(.b) (dimensional standards, residential district dimensional tables, multi-street frontage and yard requirements), in RM-1 districts, for a lot fronting on more than one street, each street frontage shall be considered a front and when a property is bounded by two streets which are opposite each other, then the remaining two property lines shall be considered sides and the side yard requirements of the zoning district shall apply to the remaining lot lines. The rear yard requirements of the zoning district shall not apply. In this case, the Property is fronted by both Spring Garden Street and Monterey Street; consequently the rear yard requirements are not applicable.

Trial Ct. Op. at 9. Importantly, Section 14-701(2)(a.1)(.1)(.b) of the Code was not enacted until November 12, 2014, approximately 8 months **after** the ZBA issued its approval. Although we do not review the trial court's decision, we note that it was error for the trial court to rely on Section 14-701(2)(a.1)(.1)(.b) of the Code in affirming the ZBA's decision when that provision was not in existence at the time the matter was before the ZBA.

8

Thus, the Code required the Property to have a rear yard and thereby subjected the Property to the rear yard surface parking prohibition.

The only relevant exception to Section 14-803(1)(b)(.1)(.a)(.ii) of the Code's prohibition on surface parking in required front, side and rear yards is contained in Section 14-803(1)(b)(.1)(.b)(.i) of the Code which permits "[r]esidential parking . . . in the required rear yard of an attached building where the lot is served by a rear alley[6] or shared driveway **with a minimum width of 12 ft.**" *Id.* (emphasis added).[7] However, the Property is not served by a rear alley or shared driveway, but

---

[6] Alley is defined by Section 14-203(14) of the Code as "[a] common right-of-way shared by three or more abutting landowners that provides secondary access to lots." *Id.*

[7] Applicant argues that because Objectors did not make specific legal arguments to the ZBA that the Code prohibited parking in a required rear yard until Objectors filed their request for reconsideration to the ZBA, the issue was waived. We disagree. Objectors testified before the ZBA that given Monterey Street's narrow width, there was insufficient room for cars to pull out of the proposed parking areas which would likely result in damage to their property, and that the proposed parking plan should be rejected. *See* R.R. at 22a-24a, 28a-30a. Mr. Plaxton testified:

> None of the cars can exit or enter the parking lot without going onto the public sidewalk. . . . [I]n order to get out of the parking lot, they would have to intrude on our property and come one foot, four inches away from a brick wall. Now the reason it has to go out – drive out that far is there is . . . an electric pole just to the right edge of the property located in the street so that the car that comes out . . . cannot even begin to turn to the right until it gets basically fully onto Monterey Street. . . . [B]efore the car can maneuver or do anything else, it has to come onto our property and be approximately one foot four inches away from the brick wall.

R.R. at 22a. Further, during the hearing, Monterey Street's narrow width, its impact on the proposed parking and the permissibility of rear parking under such circumstances was also the topic of discussion between Applicant's counsel and the ZBA members. *See* R.R. at 36a-37a, 52a. For example:

> [Applicant's counsel]: [T]his [Code] encourages and wants rear-loaded parking. The existence of the parking and the number of parking spaces and the size of the parking spaces, it's not a refusal item. The issue is the landscaping screening, and we all agree that rear-loaded parking is permitted in the RM-1 district. . . .

9

instead is bordered by a street. There is no similar exception for property served by a street.

Even if we were to interpret the above-quoted exception to apply to Monterey Street, Applicant's revised plan clearly reveals that the driving width of Monterey Street is only 6 feet, 8 inches.[8] Thus, the exception found in Section 14-803(1)(b)(.1)(.b)(.i) of the Code to the general front, side, and rear yard parking prohibition would not apply because that Code provision has a minimum width requirement of 12 feet. Accordingly, Applicant's proposed parking is not permitted by right, but rather, is **prohibited** by Section 14-803(1)(b)(.1)(.a) of the Code. The ZBA erroneously ignored Section 14-803(1)(b)(.1)(.a)(.ii). Instead, the ZBA relied on Section 14-803(1)(c) of the Code, entitled, "Additional Regulations for . . . RM-1 . . . Districts[,]" which states:

> Notwithstanding the provision of this [Code], accessory parking in the . . . RM-1 . . . district[] shall comply with the following:
>
> (.1) . . . off-street parking for any single-family, two-family, or multi-family use in an attached building or on a lot less than 20 ft. wide shall require special exception approval,

---

> [ZBA Chairperson] Chapman: I want to see the turning radius without a car ending up on the sidewalk. Is that achievable?
>
> [Applicant's counsel]: I do not know. All I can tell you is [the] Streets Department looks at that and approves this. If this is not allowed, then all of the rear-loaded parking in the City of Philadelphia in these neighborhoods is going to be illegal.

R.R. at 34a-35a. These concerns raised by Objectors at the hearing directly implicate the prohibition in Section 14-803(1)(b)(.1)(.a) of the Code, and the exception in Section 14-803(1)(b)(.1)(.b)(.1) of the Code, and, thus, the issue was not waived.

[8] The sidewalk on the south side of Monterey Street is 6 feet, 10 inches wide. The sidewalk on the north side is 6 feet, 8 inches wide. *See* R.R. at 139a. Given that vehicles are prohibited from driving on the sidewalk, *see* 75 Pa.C.S. § 3703, we would not include the width of the sidewalk in our calculation of the width of Monterey Street for purposes of applying Section 14-803(1)(b)(.1)(.b)(.1).

10

unless the parking is accessed by a rear street, rear shared driveway, or rear alley.

*Id.* Although the ZBA properly read the Code to provide that properties where "parking is accessed by a rear street, rear shared driveway or rear alley" are excluded from Section 14-803(1)(c)(.1) of the Code's special exception requirement, the special exception requirement and the exclusion therefrom contained in Section 14-803(1)(c)(.1) of the Code is within Section 14-803(1)(c) entitled: "**Additional Regulations . . .**" and, by its plain meaning,[9] does not supplant the general prohibition on surface parking in Section 14-803(1)(b)(.1)(.a) of the Code, or the requirement in Section 14-803(1)(b)(.1)(.b)(.i) of the Code that the relevant exception to that general prohibition requires a lot to be "served by a rear alley or shared driveway **with a minimum width of 12 ft.**" *Id.* (emphasis added). Therefore, the ZBA incorrectly concluded that the parking was permitted as of right.

Moreover, the ZHB further erred by granting Applicant a variance from the landscaping requirement[10] based on Applicant's inability to use the property because

---

[9]
> Pursuant to the law of statutory construction, any word or phrase, not otherwise defined, must be construed according to rules of grammar and according to common and approved usage. 1 Pa.C.S. § 1903. Courts of Pennsylvania generally use dictionaries as source material to determine the common and approved usage of terms not defined in statutes.

*Therres v. Zoning Hearing Bd. of the Borough of Rose Valley*, 947 A.2d 226, 230 (Pa. Cmwlth. 2008).

[10] In its brief to this Court, Applicant repeatedly refers to the variance the ZBA granted as a dimensional variance, and relies on the case of *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43 (Pa. 1998), to support its argument that the ZBA was permitted to consider a less stringent standard when granting the variance. In *Hertzberg*, our Supreme Court differentiated between the standards to be used when considering dimensional variances and those for use variances. The Court explained:

> A variance applicant must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. The issue in this appeal arises from the application of the first part of the test regarding whether or not

11

it incorrectly concluded that the rear yard parking was a permitted use. Accordingly, we reverse the trial court's decision, and remand the matter to the trial court with the direction to remand this action to the ZBA to determine whether a variance should be granted to permit the proposed parking and, if so, whether a variance should be granted from the landscaping requirements.[11]

---

> unnecessary hardship will result from the denial of the variance. This Court has previously held in the context of use variances that unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance.
>
> The issue here involves a dimensional variance and not a use variance - an important distinction ignored by the Commonwealth Court. When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id*. at 47 (citations omitted). Our Supreme Court ultimately held that "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id*. at 48. **Importantly, contrary to Applicant's representation, the ZBA's Notice of Decision characterized the variance granted in the current matter as a *use* variance, not a dimensional variance,** and thus, Applicant was required to demonstrate the appropriate hardship standard for such a variance. *See* R.R. at 66a.

[11] Since Applicant seeks to use a rear yard for prohibited parking, it is "propos[ing] to use the [P]roperty in a manner that is wholly outside the zoning regulation[,]" and thus must meet the requirements for a use variance. *Hertzberg,* 721 A.2d at 47. It is an applicant's burden to demonstrate that it meets the requirements for a use variance. Our Supreme Court recently explained:

> Section 14-1802(1) of the [Code] sets forth specific criteria that the ZBA must consider in determining whether to grant a variance. This Court has 'boiled down' the [Section] 14-1802(1) criteria into three key requirements: '(1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) . . . the minimum variance that will afford relief at the least modification possible.' [*E*]. *Torresdale Civic* [*Ass'n*] *v. Zoning* [*Bd.*] *of Adjustment*

*of* [*Phila.*] [*Cnty.*], . . . 639 A.2d 446, 447 ([Pa.] 1994). The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district. . . . In addition, the special conditions or circumstances forming the basis for the variance must not have resulted from the actions of the party seeking the variance. [Section] 14-1802(1)(d). The party seeking the variance bears the burden of proof.

This Court has previously held that, in the context of use variances, 'unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance.' [*Hertzberg* , 721 A.2d at 47] . . . .

This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. . . . Showing that the property at issue is 'valueless' unless the requested variance is granted 'is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request.' *Hertzberg,* [721 A.2d] at 48. Rather, 'multiple factors are to be taken into account' when assessing whether unnecessary hardship has been established. *Id.* . . . .

. . . .

Although a property owner is not required to show that his or her property is valueless unless a variance is granted, '[m]ere economic hardship will not of itself justify a grant of a variance.' *Wilson v. Plumstead* [*Twp.*] *Zoning Hearing* [*Bd.*], . . . 936 A.2d 1061, 1069 ([Pa.] 2007) (citation omitted). In *Valley View* [*Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)] we explained that 'mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance.' Particularly where a variance is sought in order to make a change from an existing use consistent with the zoning code to an inconsistent use, 'the mere fact that the property would increase in value . . . if a variance were granted, is not of itself a sufficient basis' upon which to find unnecessary hardship. *O'Neill v.* [*Phila.*] *Zoning* [*Bd.*] *of Adjustment, . . .* 120 A.2d 901, 904 ([Pa.] 1956)[.] . . .

*Marshall v. City of Phila.*, 97 A.3d 323, 329-30 (Pa. 2014) (citations omitted).

13

For all of the above reasons, the trial court's order is reversed.[12]  The matter is remanded to the trial court with the direction to remand this action to the ZBA for further proceedings consistent with this opinion.


_____
ANNE E. COVEY, Judge

---

[12] Given our disposition of this matter, we need not address Objectors' other issues.

14

Arthur and Elke Plaxton,   :
       Appellants :
          :
     v.     :
          :
Zoning Board of Adjustment, and :  No. 727 C.D. 2015
1903 Spring Garden Associates, LP :

## O R D E R

AND NOW, this 13th day of June, 2016, the Philadelphia County Common Pleas Court's (trial court) March 30, 2015 order is reversed and the matter is remanded to the trial court with the direction to remand this action to the Zoning Board of Adjustment for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge