IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the            :
February 12, 2018 Decision of    :
the Westtown Township Board of :
Supervisors Denying Toll PA     : No. 1366 C.D. 2018
XVIII, L.P.'s Conditional Use    : Argued: May 6, 2019
Application for a Flexible       :
Development of Crebilly Farm    :
                                        :
Appeal of: Toll PA XVIII, L.P.   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED: December 12, 2019


Toll PA XVIII, L.P. (Toll) appeals from an order of the Court of Common Pleas of Chester County (trial court) that affirmed a decision of the Westtown Township Board of Supervisors (Board) denying its conditional use application (Application) for a flexible residential development. Toll contends that the Board erred by denying Toll's Application where Toll met the objective criteria under Article IX, Flexible Development Regulations (Flexible Development Regulations), §§170-900-170-909, of "The Westtown Township Zoning Ordinance of 1991" (Ordinance). For the reasons that follow, we affirm in part and reverse in part.

# I. Background

Toll is the equitable owner of 322 acres of land located in Westtown Township (Township), Chester County, Pennsylvania, collectively known as "Crebilly Farm" (Property).[1]  The Property is bounded by U.S. Route 202 (also known as Wilmington Pike), PA Route 926 (also known as Street Road), West Pleasant Grove Road and South New Street.  *See* Reproduced Record (R.R.) at 339a (site location map).  Most of the Property is zoned Agricultural/Cluster Residential (A/C District), and a portion is zoned R-1 Rural Suburban Residential (R-1 District) under the Ordinance.

In October 2016, Toll submitted its Application to the Township proposing to develop a flexible development[2] on the Property under the Flexible Development Regulations of the Ordinance.  Specifically, Toll proposed to construct a 319-unit flexible development consisting of 2 existing homes, 200 new single-family homes and 117 new town/carriage houses (Proposed Development).  The Proposed Development also includes the construction of internal streets, utilities, stormwater management facilities, landscaping, screening, community recreation facilities and other associated improvements as well as 197.15 acres of open space.

---

[1] Crebilly Farm Family Associates, L.P., David M. Robinson, Laurie S. Robinson and David G. Robinson (collectively, Crebilly Farm Family) are the legal owners of the Property.

[2] The Ordinance defines "flexible development" as:

> An area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, the development plan for which does not correspond in lot size, bulk or type of dwelling, density, lot coverage, and required open space to the regulations established in any one residential district created, from time to time, under the provisions of this chapter.

Section 170-201 of the Ordinance.

Along with the Application, Toll submitted a conditional use site plan (Plan), as well as two alternate conditional use site plans, a stormwater management plan, a traffic impact study, a fiscal impact study, a geotechnical investigation report and sewer/water feasibility letters.

The Township Planning Commission (Commission), following several public meetings, recommended conditional approval of the Application. Thereafter, the Board held several public hearings on the Application, at which the Commission, adjacent townships, the local school district, local businesses, neighboring homeowner associations, neighboring property owners and a special interest association were granted party status.

In support of its Application, Toll presented expert witnesses, who testified on land planning, stormwater management, geology, wastewater engineering, traffic engineering, historic resources and fiscal/community impacts, as well as numerous exhibits. Those opposed to the Application also presented testimony and exhibits.

Based on the evidence presented, the Board made 178 findings. Of relevance here, the Board found that most of the Property is located in an area designated for cluster residential use under the Township's comprehensive plan and Ordinance. Board of Supervisors' Decision, 12/28/17, Findings of Fact (F.F.) Nos. 28, 29. The majority of the Property is farmed, though it is also used for residential purposes and improved with single-family homes, stables, barns, springhouses, equestrian facilities, sheds and additional accessory buildings. F.F. Nos. 30, 45. A flexible residential development is permitted by conditional use in the A/C and R-1 Districts. F.F. No. 54.

3

Despite finding that the Proposed Development is a permitted use on the Property and complies with numerous provisions of the Ordinance, the Board rejected the Application on the basis that Toll failed to: (1) construct four new separate turning lanes at the intersection of Route 926 and South New Street; (2) provide a public "collector road" running north/south through the Property between West Pleasant Grove Road and Route 926; (3) preserve "scenic views"; and (4) provide a meaningful review of the Proposed Development's site accesses by not revising the Plan to show possible alternative site access locations.

With regard to the turning lanes, the Board found that the Proposed Development is anticipated to generate approximately 2,742 vehicle trips per weekday and 210 vehicle trips during the weekday morning peak hours and 266 vehicle trips during the weekday afternoon peak hours. The Proposed Development will cause an increase in the overall delay at the intersection of Routes 202 and 926, which require certain improvements to mitigate traffic impacts. Independent of Toll's Proposed Development, the Pennsylvania Department of Transportation (PennDOT) contemplates the completion of certain improvements at the intersection of Routes 202 and 926. In order to mitigate the traffic impacts of the Proposed Development, Toll will provide a southbound Route 202 right-turn lane and a second eastbound Route 926 left-turn lane and eliminate the split-phasing operations of the existing signal at the intersection. In the event PennDOT does not complete the Routes 202/926 intersection improvements prior to development of the Property, Toll agrees to complete such improvements. PennDOT, at a minimum, will require Toll to provide left turn lanes at all four approaches to the intersection of Route 926/South New Street, as well as replace and upgrade all of the signal equipment and mast-arms at the intersection. Longer left turn lanes at all four approaches to

4

the intersection of Route 926/South New Street are required. If Toll fails to provide or contribute toward the turn lanes, traffic generated from the Proposed Development will not be able to be safely and efficiently managed on the existing road network. The traffic impacts from the Proposed Development will adversely impact the traffic conditions at the intersection of Route 926/South New Street. Toll failed to mitigate such impacts. F.F. Nos. 136-140, 144, 147-149.

With regard to the collector road, the Board found that Section 170-503(C)(3) of the Ordinance requires Toll to link its road network to existing or proposed intersections or other points of controlled and/or signalized access to collector and/or arterial highways. Toll failed to adequately provide a collector road from West Pleasant Grove Road to Route 926. F.F. Nos. 92-96.

As for the scenic views, the Board found that Toll did not identify scenic views as part of its required site analysis under Conservation Design requirements set forth in Section 170-1617(C)(1)(c) of the Ordinance. The Board also found that Toll did not take into account all lands visible from any adjacent public road, measured as viewed from a height of four feet above the surface of the road looking in any direction or angle across the Property, based on winter conditions when existing vegetation offers the least obstruction of view as part of its site analysis submission as required by Section 170-905(A)(1). F.F. No. 44, 59-60.

Finally, with regard to revising the Plan to show alternative site access locations, the Board found that Toll initially proposed the following accesses for the Proposed Development: (a) a Route 202 right-in/right-out-only access; (b) a Route 926 full movement signalized access at a "T" intersection; (c) a West Pleasant Grove Road access opposite Dunvegan Road; (d) a West Pleasant Grove Road access opposite Hidden Pond Way; and (e) an emergency access from South New Street.

As a result of review comments from PennDOT and the Township, Toll agreed to modify the access to the Proposed Development as follows: (a) the Route 926 signalized access would be moved opposite Bridlewood Boulevard to create a four-way intersection; and (b) the easternmost West Pleasant Grove Road Access that was originally opposite Hidden Pond Way would be located to the west in order to provide adequate sight distance without re-profiling West Pleasant Grove Road. Toll was willing to eliminate the Route 202 right-in/right-out-only access. Notwithstanding, Toll did not revise its Plan to depict the location of the relocated access intersection or Route 926/Bridlewood Boulevard access, the easternmost West Pleasant Grove Road access, or the Route 202 access. The Board found it could not fully consider the merits of the location of the access points without the benefit of a revised plan showing precisely what Toll intends to develop on the Property. The Board further found it could not determine whether the alternate access points comply with the Ordinance unless and until such plan is submitted and reviewed by consultants. Thus, the Board voted unanimously to deny the Application. F.F. Nos. 131-135.

From this decision, Toll filed a land use appeal with the trial court. Without taking additional evidence, the trial court concluded that the Board properly denied Toll's conditional use application on at least four separate grounds and affirmed. However, the trial court rejected the applicability of the "scenic views" Conservation Design requirement upon finding it was not objective. Notwithstanding, the trial court determined that Toll still failed to comply with the Conservation Design requirement to depict "all lands visible from any adjacent public road" and found that to be a valid basis for the Board's decision. Toll's appeal

6

to this Court followed.[3]  Appellees filed briefs in support of and in opposition to Toll's appeal.[4]

## II. Issues

Toll contends that the Board erred in determining that Toll failed to satisfy four separate Ordinance requirements.  First, the Board erred in determining that Toll was required to construct improvements at the intersection of Route 926 and South New Street.  Such improvements are controlled by PennDOT, not the Board, and are located offsite.  Second, the Board erred in determining that Toll was required to construct a collector road through the Property.  Third, the Board erred by denying Toll's Application based on its failure to depict "all lands visible from any adjacent public road."  Board of Supervisors' Decision at 47.  The purpose of depicting such lands is to preserve scenic views from existing streets, which the trial

---

[3] Where, as here, the trial court did not take any additional evidence, our review is limited to determining whether the local governing body committed an error of law or an abuse of discretion.  *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, 999 A.2d 630, 634 (Pa. Cmwlth. 2010).  An abuse of discretion occurs when findings of fact are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Northampton Township v. Zoning Hearing Board Northampton Township*, 969 A.2d 24, 27 n.1 (Pa. Cmwlth. 2009).  "In conditional use proceedings where the trial court has taken no additional evidence, the Board is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the Board."  *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 754-55 (Pa. Cmwlth. 2014).

[4] Appellees are the Township; Crebilly Farm Family; Brandywine at Thornbury Homeowners Association; Neighbors for Crebilly, LLC; and Thornbury Homeowners Association.  The Township filed a brief in opposition.  Crebilly Farm Family joins in the brief and reply brief filed by Toll.  Brandywine at Thornbury Homeowners Association joins solely in support of Toll's argument regarding the collector road.  Neighbors for Crebilly, LLC offers two independent alternate bases for affirming the denial of the Application.  Thornbury Homeowners Association filed a notice of non-participation.

court held is not an objective standard that requires compliance. Finally, Toll claims that the Board erred in determining that Toll is required to revise its Plan to depict alternate site access locations discussed and evaluated during the hearings on the Application. Toll maintains that it satisfied all of the applicable objective standards for conditional use and that no party demonstrated that Toll's Proposed Development would result in harm greater than that which would normally flow from such a proposed use. Therefore, Toll asks this Court to reverse the trial court's order and approve its Application.

### III. Discussion
### A. PennDOT Intersection

Toll contends that the Board erred in requiring Toll to construct public roadway improvements, i.e., turning lanes at the intersection of Route 926 and South New Street. First, Toll argues that the turning lanes at all four approaches to the intersection are warranted under preexisting conditions without the Proposed Development ever being constructed. Toll's Proposed Development did not generate the need for improvements at this intersection. An increase in traffic at an already impaired intersection is not a basis to deny a conditional use application when the proposed use generates traffic normally generated by the type of proposed use. In order to defeat a conditional use application on this basis, there must be conclusive evidence demonstrating a high degree of probability that the proposed use will generate *abnormal* traffic patterns not normally generated by that type of proposed use or pose a substantial threat to the health and safety of the community. Such evidence was not presented here.

Second, Toll asserts that the improvements the Township seeks are offsite. Toll does not own or control the properties adjacent to the other three

approaches. The Proposed Development will not take access from the Route 926/South New Street intersection. The closest proposed site access to the Proposed Development is approximately 2,500 feet to the east of the intersection. *See* R.R. at 629a.

Third, Toll maintains that the intersection is signalized and under the jurisdiction and control of PennDOT. The Board does not have the authority to regulate or dictate what improvements, if any, are required at this intersection, which is governed by PennDOT through the Highway Occupancy Permit application process.

The Pennsylvania Municipalities Planning Code[5] (MPC) provides that a zoning ordinance may contain "provisions for conditional uses to be allowed or denied by the governing body after recommendations by the planning agency and hearing, pursuant to express standards and criteria set forth in the zoning ordinance." Section 603(c)(2) of the MPC, 53 P.S. §10603(c)(2). "A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006).[6] "An applicant for conditional use has the burden to demonstrate compliance with the specific criteria of the ordinance." *Id.*

Once an applicant shows compliance with the specific requirements of an ordinance, it is presumed that the use is consistent with the promotion of health, safety, and general welfare. *Thompson*, 896 A.2d at 670; *In re Brickstone Realty Corp.*, 789 A.2d 333, 341-42 (Pa. Cmwlth. 2001). "The burden then shifts to

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[6] Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both. *Thompson*, 896 A.2d at 670.

objectors to prove that the proposed use is not, in fact, consistent with the promotion of health, safety, and general welfare." *Brickstone*, 789 A.2d at 340. An application must be granted unless the objectors present "sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare." *Thompson*, 896 A.2d at 670; *Brickstone*, 789 A.2d at 341-42. "[T]he degree of harm required to justify denial of the conditional use must be greater than that which normally flows from the proposed use." *In re Cutler Group, Inc.*, 880 A.2d 39, 43 (Pa. Cmwlth. 2005).

With regard to traffic, an anticipated increase in traffic for a proposed use would not on its own serve to defeat a request for special exception or conditional use. *See Brickstone*, 789 A.2d at 341-42; *Bray v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980). "Moreover, an increase in traffic at or near an already dangerous intersection is not a sufficient basis for denying a special exception when the proposed use would contribute less traffic than a 'normal use' of the same type." *Brickstone*, 789 A.2d at 342. Indeed, to defeat a special exception or conditional use "on the grounds of traffic conditions, there must be a high probability that the proposed use will generate traffic patterns not normally generated by that type of use and that such 'abnormal' traffic will pose a substantial threat to the health and safety of the community." *Id.*

Section 170-2009(D) of the Ordinance sets the standards for conditional use approval. Of relevance here, Section 170-2009(D)(1)(h) provides:

> The burden of proof shall be upon the applicant to prove to the satisfaction of the Board . . . , by credible evidence, that the use will not result in or substantially add to a significant traffic hazard or significant traffic congestion. The peak traffic generated by the development shall be accommodated in a safe and efficient manner. Such

analysis shall consider any improvements to streets that the applicant is committed to complete or fund.

Here, to show compliance with Section 170-2009(D)(1)(h) of the Ordinance, Toll bore the burden of proving, to the satisfaction of the Board, by credible evidence, "that the use will not result in or substantially add to a significant traffic hazard or significant traffic congestion." To that end, Toll presented the testimony of Nicole R. Kline, P.E., Senior Project Manager for McMahon Associates, who was accepted as an expert in traffic engineering. Kline testified that the left turn lanes at all four approaches were warranted under existing conditions. Because the traffic congestion is preexisting, Kline maintained Toll should not bear the responsibility of making the improvements. However, the Board rejected Kline's testimony as not credible as it relates to the traffic impact from the Proposed Development based on inconsistencies between her testimony and the traffic impact study that she prepared and her reticence in response to questions regarding impacts to the South New Street intersection. Board of Supervisors' Decision, at 46-47.

Instead, the Board relied upon the Township's traffic engineering expert, Albert P. Federico, P.E., Senior Project Manager for Kimley Horm. Federico testified that the Proposed Development as currently designed would necessitate left turn lanes at all four approaches to the South New Street Intersection longer than those already warranted under existing conditions. He testified that "if [Toll did] not provide the left turn lanes or contribute toward the turn lanes that the traffic generated from the [Proposed] [D]evelopment [would] not be able to be safely and efficiently managed on the existing road network as modified or upgraded by [Toll]." R.R. at 2229a. The Board credited Federico's testimony and found that the traffic impacts from the Proposed Development would adversely impact the traffic

11

conditions at the South New Street Intersection, creating a traffic hazard and adding to significant traffic congestion. F.F. No. 148.

Although the significant traffic congestion along Route 202 corridor is preexisting, the Board credited Federico's testimony that the Proposed Development would substantially contribute to that congestion and pose a threat to the health and safety of the community. F.F. No. 148. Upon review, Toll did not carry its burden of proving that its Proposed Development would not result in or substantially add to a significant traffic hazard or significant traffic congestion. As Toll did not satisfy its initial burden, the burden never shifted to the objecting parties to prove that the proposed use is contrary to the health, safety and general welfare.

As to whether Toll was required to mitigate the traffic impacts of its Proposed Development by constructing four turn lanes at the intersection of Route 926 and South New Street, Section 170-2009(B)(1) of the Ordinance provides that "[i]t shall be the burden of the applicant to demonstrate compliance with the standards for conditional use contained in this section and with any other relevant stipulations of this chapter, and to indicate means by which potential impacts from the proposed use will be mitigated."

Toll argues that the Board cannot compel such improvements because this intersection is "offsite."[7] Toll claims that Section 503-A(b) of the MPC,[8]

---

[7] The Board asserts that Toll waived the issue of whether the South New Street Intersection is an offsite improvement by failing to raise this issue before the Board. Board's Brief at 21. However, Toll had no advance notice that the failure to make these improvements would serve as a legal basis for the Board's denial. Toll properly raised this issue at the first opportunity to do so and it was addressed by the trial court. *See* Trial Court Op., 10/1/18, at 13. Therefore, we decline to find waiver.

[8] Added by the Act of December 19, 1990, P.L. 1343, *as amended*, 53 P.S. §10503-A(b).

prohibits the Township from requiring "offsite" road improvements. As to whether the road improvements are offsite or onsite, Section 502-A of the MPC,[9] defines "onsite improvements" as: "all improvements constructed on the applicant's property, or the improvement constructed on the property abutting the applicant's property necessary for the ingress or egress to the applicant's property."

According to Toll, the improvement must be on the Property or abut the Property and be necessary for the ingress or egress for the road improvement to be considered "onsite." As Toll points out, only one of the four new turning lanes abuts Toll's Property, and they are not necessary for the ingress or egress to the Proposed Development because other access is contemplated.

However, as the Board points out, Toll's reliance on the MPC is misplaced in the context of a conditional use approval. Section 503-A of the MPC specifically pertains to land development or subdivision approval, providing:

> *No municipality shall have the power to require as a condition for approval of a land development or subdivision application* the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever or impose any contribution in lieu thereof, exaction fee, or any connection, tapping or similar fee except as may be specifically authorized under this act.

53 P.S. §10503-A (emphasis added). This provision is inapplicable in the context of a conditional use application. *See Borough of Hummelstown v. Borough of Hummelstown Zoning Hearing Board* (Pa. Cmwlth., No. 2067 C.D. 2012, filed August 1, 2013) (holding that this provision pertains to a land development or

---

[9] Added by the Act of December 19, 1990, P.L. 1343, 53 P.S. §10502-A.

subdivision application not a request for a special exception to which appropriate conditions can be attached).[10]

Regardless of whether the proposed accesses and improvements are onsite or offsite, Toll persuasively argues that the Board cannot compel such improvements because the intersection is controlled by PennDOT. Indeed, design and improvement of the four turning lanes fall under the jurisdiction of PennDOT as part of the Highway Occupancy Permit application process. *See* Sections 408 and 420 of the State Highway Law.[11] As Federico testified, PennDOT would have "jurisdictional authority over the design of the turn lanes." R.R. at 2235a; *see* R.R. at 1289a ("The proposed accesses and improvements along [Routes] 202 and . . . 926 . . . will require PennDOT approval."). The Township may condition approval on Toll obtaining a Highway Occupancy Permit with PennDOT, *see Smithfield v. Kessler*, 882 A.2d 17, 22 (Pa. Cmwlth. 2005); *CACO Three, Inc. v. Board of Supervisors of Huntington Township*, 845 A.2d 991, 998 (Pa. Cmwlth. 2004); however, the Township cannot deny Toll's Application on the basis that its Plan did not depict changes to PennDOT-controlled roadways. Therefore, we reverse on this claim.

## B. Collector Road

Next, Toll argues that the Ordinance does not require it to construct a collector road through the middle of the Property to address existing regional traffic congestion on Route 202. The Township's Growth Management Plan, which serves

---

[10] Section 414(a) of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

[11] Act of June 1, 1945, P.L., 1242, *as amended*, 36 P.S. §§670-408, 670-420.

14

as its comprehensive plan, contains general goals, including working with PennDOT and developers to continually increase traffic safety and address congestion at Routes 202 and 926. According to the Growth Management Plan, which is 17 years old, if the Property is developed, a new road should be required running parallel to Route 202. The Plan further suggested that this "road link" be constructed to encourage persons who wish to turn westward from southbound Route 202 to take an alternate route. Thus, the goal was to alleviate existing traffic. Toll argues that the "road link" or "collector road" is unrelated to its Proposed Development. The Board improperly imposed upon Toll the Growth Management Plan's general goal of requiring a collector road in order to alleviate existing regional traffic congestion. Toll maintains that a conditional use applicant is not required to prove consistency with the municipality's comprehensive plan.[12]

Toll contends that construction of a collector road is not required by the Ordinance. According to Toll, flexible developments are governed by Flexible Development Regulations and are not subject to the general provisions contained in Section 170-503(C) of the Ordinance. The Flexible Development Regulations do not require a collector road. Even assuming such requirements applied, there are no existing collector roads on the adjacent properties to connect to and a collector road is not needed to provide reasonable access to the Proposed Development. Thus, Toll's failure to provide a collector road through its Property is not a valid basis for denial of its application. Toll contends that the Board's attempt to address regional existing traffic congestion on the "back" of a private property owner is tantamount to an unlawful taking without compensation.

_____

[12] Contrary to the Board's assertions, Toll did not waive this issue. *See* R.R. at 2591a-92a (Toll's proposed findings of fact submitted to the Board in support of its Application challenging the requirement of a "collector road").

"[A]n applicant seeking conditional use approval must prove compliance with both the use-specific and general conditional use standards and criteria explicitly set forth in the applicable zoning ordinance." *In re AMA/American Marketing Association, Inc.*, 142 A.3d 923, 932 (Pa. Cmwlth. 2016). Applications for flexible development in the Township are governed by the Flexible Development Regulations, §§170-900-170-909 of the Ordinance. Section 170-902 of the Ordinance provides that the Flexible Development Regulations' procedure may be applied in the A/C and R-1 Districts when approved by the Board as a conditional use.

In addition, the conditional use design standards found in the A/C District (Section 170-503) and the R-1 District (Section 170-603) also apply to an application for flexible development, unless the flexible development procedures "exceed" or "address matters not covered by" the standard design criteria in the A/C and R-1 Districts. Sections 170-503(B) and 170-603(B) of the Ordinance. Section 170-503(A) of the Ordinance governs design standards for "*all* uses permitted by right, special exception and *conditional use in the A/C District.*" (Emphasis added.) Section 170-503(A)(7) of the Ordinance requires compliance with access and traffic control as required by Sections 170-503(C) and 170-1510 of the Ordinance.

Section 170-503(C) provides, that as a condition for approval, an applicant must "prove to the satisfaction of the Board . . . that the proposed use or development will provide safe and efficient vehicular . . . traffic access, circulation and control" consistent with six requirements, including the development of collector roads. Specifically, Section 170-503(C)(1)-(3) of the Ordinance requires that an applicant seeking the Board's approval of a proposed development to establish:

16

(1) Traffic access shall be fully coordinated *with adjacent existing and future development*, including but not limited to providing and promoting appropriate traffic access to/from adjacent properties.

(2) Traffic access to use(s) within any development site shall be provided by a fully developed internal network of local roads or private drives, paths and *trails which also shall link any proposed use or development to existing or proposed intersections or other points of controlled and/or signalized access to collector and/or arterial highway(s).*

(3) *Continuous collector street(s) and trail(s) shall be developed as part of the subject use or development to provide internal through connection(s) between existing collector and/or arterial streets and trail(s), as applicable, and as required by the Board . . . to provide reasonable access to the subject use or development.* (Examples may include but are not limited to: a through collector street connecting the intersection of Skiles Boulevard and *U.S. Route 202 with West Pleasant Grove Road and PA Route 926*); a through collector street connecting Walnut Hill/Shady Grove Roads to Westtown Road; and a through collector street connection to PA Routes 352 and 926.)

(Emphasis added.) Section 170-1510 of the Ordinance provides criteria in order to minimize traffic congestion and hazard, control street access and encourage the orderly development of street or highway frontage, but does not require construction of a collector road. Section 170-201 of the Ordinance defines "collector street" as:

A street designed and located to provide means of access to traffic off local streets and to provide access for through traffic between residential neighborhoods and districts within the Township to major streets and/or a street used for access to nonresidential properties, i.e., commercial, industrial, professional, etc.

Similarly, Section 170-603(A) of the Ordinance governs design standards for "*all* uses permitted by right, special exception and *conditional use in*

17

*the R-1 District.*" (Emphasis added.) Section 170-603(A)(4) of the Ordinance merely requires compliance with access and traffic control as required by Section 170-1510.

Toll argues that the above standards do not apply to its Proposed Development because the flexible development procedures set forth in Flexible Development Regulations of the Ordinance solely govern flexible developments. However, Sections 170-503(B) and 170-603(B) expressly provide that the flexible development procedures govern only "where those standards exceed or address matters not covered by" Sections 170-503 and 170-603, respectively. The Flexible Development Regulations contain only one passage referring to collector roads requiring the designation of the type of street (arterial, collector, or local depending upon its function). Section 170-905(B)(1) of the Ordinance. Therefore, the flexible development procedures do not exceed or address matters covered by the general design standards. Where a design standard requirement is not specifically addressed by the Flexible Development Regulations, the design standards of Section 170-503(A) apply to Toll's Application, more specifically, the access and traffic control provisions of Section 170-503(C), because Toll is seeking a conditional use in the A/C District. Toll's Plan failed to provide a "continuous collector street" from West Pleasant Grove Road to Route 926 as required by Section 170-503(C)(3) of the Ordinance.

Toll claims that compliance with this provision is not required or even possible because there is no existing collector street on the adjacent property located to the north of West Pleasant Grove Road upon which to connect. As the Board recognized, due to site constraints, it is not likely that the collector road on the north side of West Pleasant Grove Road could align exactly to continue straight south to

18

Route 926. However, the definition of "collector street" does not require a direct link to a collector street. Moreover, Section 170-503(C)(1) provides, with emphasis added, that "[t]raffic access shall be fully coordinated *with adjacent existing and future development . . . .*" Federico did not testify that the requirements for a collector street could not be met in this case, and Toll did not offer any evidence to that effect. To accept Toll's position would inhibit the development of any collector roads within the Township and ignore future development. The Board did not err in concluding that a collector road will provide a reasonable internal through connection between West Pleasant Grove Road and Route 926, running parallel to and serving as an alternate for a small portion of Route 202.

As for Toll's argument that a collector road is not necessary because its Plan proposes other means of accessing the Property, Section 170-503(C)(3) of the Ordinance requires "reasonable access" to a development. Insofar as Toll argues that such a requirement is the equivalent to an unlawful taking, Toll did not challenge the substantive validity of the Ordinance or present the issue to the Board for consideration. Consequently, Toll did not preserve this issue for review. *See Piccolella v. Lycoming County Zoning Hearing Board*, 984 A.2d 1046, 1060 n.4 (Pa. Cmwlth. 2009). Upon review, the Board did not err or abuse its discretion by denying Toll's conditional use application for failure to provide a collector road.

### C. Scenic View

Next, Toll argues that the Board and trial court wrongfully denied its Application on the basis that it failed to comply with the Ordinance's Conservation Design process by omitting visible land data. The Board denied Toll's Application, in part, for its failure to account for "scenic views." As the trial court properly held, the term "scenic view" is not an objective standard. Nevertheless, the trial court

19

upheld the Board's determination that Toll failed to depict "all lands visible from any adjacent public road" as required under Section 170-905(A)(1)(m) of the Ordinance. Toll contends that, because it was not required to preserve "scenic views" from existing streets, there is no valid basis to require Toll to analyze "all lands visible from any adjacent public road." In addition, Toll also maintains that Section 170-905(A)(1)(m) directly conflicts with the screening requirements under Sections 170-905(G) and 170-1508 of the Ordinance. Further, Toll argues that the Township's Zoning Officer determined that the Application was complete without requiring Toll to separately depict "all lands visible from any adjacent public road," *see* R.R. at 1740a-42a, and the Board is bound by this determination of completeness.

A flexible development must comply with the Conservation Design criteria of Section 170-1617 of the Ordinance. In addition, it must comply with the flexible design standards of Section 170-905(A) of the Ordinance. Pursuant to Section 170-905(A)(1) of the Ordinance, an applicant seeking conditional use approval for a flexible development must prepare a site analysis that identifies the following 13 items, with emphasis added:

> (a) Degree of slope, in the following ranges: less than 15%, as measured at two-foot contour intervals; 15%-25% and greater than 25%, as measured at five-foot contour intervals.
>
> (b) Areas subject to floodplain regulations, including floodway, flood-fringe, and approximated floodplain areas, as delineated by the Flood Insurance Study for Westtown Township prepared by the U.S. Department of Housing and Urban Development and the Federal Insurance Administration. [Amended 9-5-2017 by Ord. No. 2017-3]

(c) Water bodies and watercourses, both perennial and seasonal.

(d) Drainage basin and subbasins.

(e) Wetlands, as defined by this chapter.

(f) Generalized soil types as designated in the Soil Survey of Chester and Delaware Counties (USDA, 1963).

(g) Generalized geological characteristics, including rock formation type(s).

(h) Existing vegetation, denoted as to type, including tree masses, treelines, and hedgerows; individual freestanding trees over six inches [diameter at breast height]; wetland vegetation; meadow, pasture, or cropland; orchard; cultivated and ornamental garden areas; etc.

(i) Existing structures and other improvements.

(j) Historic resources, including structures, ruins, sites, traces, and relationship to the bounds of any National Register historic district.

(k) Existing paths and trails.

(l) Scenic views.

(m) *All lands visible from any adjacent public road. Visibility shall be measured as viewed from a height of four feet above the surface of the road looking in any direction or angle across the subject property, and shall be based on winter conditions (whether actual or estimated at the time of inventory) when existing vegetation offers the least obstruction of view. Areas predominantly obscured from view may be excluded from inventory of visible lands subject to Township approval.*

Section 170-200 of the Ordinance defines "view" as the "relative ability to see a given object from a designated location."

21

While "*scenic* views," as the trial court determined, is wholly subjective, identification of "all lands visible from any adjacent public road," is not. It is an objective measure seeking an inventory of what land is visible from the road, not whether the view is "scenic." Obscured views may be excluded. Section 170-905(A)(1)(m) of the Ordinance. Identifying visible views is the counterpart to identifying vegetation, such as treelines and hedgerows. *See* Section 170-905(A)(1)(h) of the Ordinance. Toll failed to identify any lands visible from the adjacent public roads.

Contrary to Toll's assertions, the identification of all lands visible from any adjacent public road does not conflict with the Ordinance's screening requirements. Section 170-905(A) of the Ordinance provides considerations for the Board in granting a conditional use application by describing conditions that exist *prior to* development. Conversely, Section 170-1508 addresses the requirement of providing and continually maintaining a visual barrier or landscape screen *post* development.

Toll also relies on the Township's Zoning Officer's determination that Toll's resubmitted Application was "complete" without requiring Toll to separately depict "all lands visible from any adjacent public road." Section 170-2009(C)(1) of the Ordinance, which governs the conditional use application review procedures, provides:

> The application shall be reviewed by the Zoning Officer. If it is deficient with regard to any required components, procedures, or fees, the Zoning Officer shall so notify the applicant. This review and notification shall occur prior to the scheduling of a public hearing on the application. If such identified deficiencies are not remedied in the form of a resubmitted application, such deficiencies shall constitute grounds for denial of the application by the Board . . . subsequent to public hearing.

Relying on *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587 (Pa. Cmwlth. 2008), Toll maintains that the Board is bound by the Zoning Officer's determination of completeness. In *Nextel*, the ordinance required the zoning officer to "refuse to accept an incomplete application which does not provide sufficient information to determine compliance with this Ordinance." *Nextel*, 958 A.2d at 592. The applicant failed to attach its required site plan to its conditional use application. Notwithstanding this deficiency, the governing body accepted the application along with a $600 application fee, which we interpreted as acceptance of a completed form. We opined that if the governing body believed the application was incomplete, "it had an obligation under its [o]rdinance to refuse to accept." *Id.* at 593-94. Once an application is accepted and retained, the time limitations of the MPC govern. *Id.* at 594. "Further, after application acceptance, technical requirements and interpretations may be addressed collaboratively as ordinance compliance is assessed." *Id.*

Toll's reliance on *Nextel* is misplaced. Unlike the ordinance in *Nextel*, the Ordinance here does not compel the Zoning Officer to reject an incomplete application. Rather, the Ordinance requires the Zoning Officer to advise the applicant of any deficiencies detected. Moreover, *Nextel* clearly holds that after an application is accepted, review turns to whether the applicant complied with the technical requirements of the ordinance. 958 A.2d at 593. Although the Zoning Officer's review did not reveal that the visible land data was missing, his declaration of completeness did not excuse Toll from complying with the technical requirements of the Ordinance or otherwise bind the Board in their determination of compliance. *See Nextel*.

23

## D. Alternate Access

Lastly, Toll maintains it was not required to revise its Plan to show alternative accesses evaluated in response to traffic review comments. The Plan for the Proposed Development depicts: a right-in/right-out on Route 202; one signalized "T" intersection with Route 926 between Bridlewood Boulevard and Route 202; and two unsignalized accesses on West Pleasant Grove Road, opposite Dunvegan Road and Hidden Pond Way. The accesses onto Routes 202 and 926 are under the jurisdiction and control of PennDOT; the accesses on West Pleasant Grove Road are under the jurisdiction and control of the Township. After filing the Application, PennDOT and the Township reviewed the accesses and made comments expressing their preferences. As a result, Toll evaluated possible alternative access locations should it be required to relocate site access. However, Toll maintains that it was not required to relocate its access points and therefore it was not required to revise and resubmit its entire Plan to depict possible alternative accesses. Toll claims that the Board's denial of Toll's Application on this basis is unjustified.

Section 170-2009(B) of the Ordinance delineates the submission and content of conditional use applications. It requires an "*accurate* site plan prepared by a qualified professional." Section 170-2009(B)(3) of the Ordinance (emphasis added). In addition, Section 170-2009(B)(6)(a) requires that the site plan show "the applicant's *intentions* with regard to . . . [s]ite access." (Emphasis added).

Toll's Plan for the Proposed Development depicts four access points to the surrounding roadways: (1) a right-in/right-out access on Route 202; (2) a signalized "T" intersection with Route 926 between Bridlewood Boulevard and Route 202; (3) an unsignalized access on West Pleasant Grove Road opposite Dunvegan Road; and (4) an unsignalized access on West Pleasant Grove Road opposite Hidden Pond Way. R.R. at 791a, 1288a, 2055a. Subsequent to filing the

24

Application, both the Township and PennDOT expressed unofficial preferences that the Proposed Development's signalized Route 926 access align directly across from Bridlewood Boulevard in neighboring Thornbury Township. R.R. at 1542a. The Township's traffic engineer, Federico, reviewed the Plan and issued a letter commenting that the right-out access on Route 202 may be blocked during peak hours and the accesses along West Pleasant Grove Road and Route 926 needed adjustments for safety. R.R. at 1288a, 1290a. He made recommendations and requested a transportation impact study to include, *inter alia*, consideration of the intersection of South New Street and West Pleasant Grove Road, an alternative analysis of Routes 202 and 926 without anticipated PennDOT improvements, and post-development turn-lane analysis. R.R. at 1289a-1290a.

In response, Toll evaluated possible alternative access locations in a revised traffic impact study. *See* R.R. at 1297a-1378a. Toll concedes it did not amend its Plan for two reasons. First, the potential alternative access locations along Route 926 and the elimination of the Route 202 access, as discussed above, fall under the control and jurisdiction of PennDOT, not the Township. Second, neither PennDOT nor the Township required Toll to revise or relocate any of its proposed site access locations. Rather, the proposed revisions were in response to review comments and recommendations. F.F. Nos. 133-134; R.R. at 1894a. Although Toll was willing to make the revisions if required, *see* R.R. at 1894a, the Plan, as submitted, accurately depicted Toll's "intentions with regard to . . . [s]ite access." *See* Section 170-2009(B)(6)(a) of the Ordinance.

Although the Board found that it could not fully consider the merits of the alternative access points without a revised plan, F.F. No. 135, the record belies this finding. Federico reviewed, commented on, testified to and issued review letters

25

regarding the alternative access locations. *See* R.R. at 1292a-96a. He testified that he reviewed all of the proposed accesses – those included on the Plan as well as the alternate access points. R.R. at 2195a. Federico did not testify that any of the proposed access locations will create an abnormal impact or substantial threat to the health or safety of the community. In his last comment letter, Federico focused on the collector road and the efficiency (not safety) of the Route 202 access and the need for turning lanes at PennDOT controlled intersections. *See* R.R. at 1294a-96a. Thus, we conclude that the Board erred by denying Toll's Application on this basis.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's order insofar as the Board improperly denied Toll's Application on the basis that Toll's Plan did not depict changes to PennDOT-controlled roadways or depict alternate site accesses. We affirm the order in all other respects and uphold the Board's denial of the Application because Toll failed to satisfy all of the requirements of the Ordinance.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the : 
February 12, 2018 Decision of : 
the Westtown Township Board of : 
Supervisors Denying Toll PA : No. 1366 C.D. 2018
XVIII, L.P.'s Conditional Use : 
Application for a Flexible : 
Development of Crebilly Farm : 
 : 
Appeal of: Toll PA XVIII, L.P. :

# **O R D E R**

AND NOW, this 12th day of December, 2019, the order of the Court of Common Pleas of Chester County (trial court), dated October 1, 2018, is REVERSED IN PART insofar as it denied Appellant Toll PA XVIII, L.P.'s conditional use application for failure to depict changes to roadways controlled by the Pennsylvania Department of Transportation and alternate access points on its conditional use site plan; the trial court's order is AFFIRMED in all other respects.

_____
MICHAEL H. WOJCIK, Judge